IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PAUL A. CLARK,

Petitioner,

vs.

ROB JEFFREYS, NDCS Director;

Respondent.

**4:23CV3118**

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Paul A. Clark. Filing No. 1. Respondent, Rob Jeffreys, has answered and filed the relevant state court records. *See* Filing No. 15 (Answer); Filing No. 12 (State Court Records). Upon consideration of the briefing provided by both parties and application of the relevant law, the Court finds that each of Petitioner's remaining claims either lack merit or are procedurally defaulted. Accordingly, the Petition is denied, and this case is dismissed with prejudice.

## I. BACKGROUND[1]

### A. Factual Basis for Petitioner's Arrest

In July 2017, the Lincoln Police Department ("LPD") was searching for Phillip Madlock, who had gone missing. Tim Montgomery was one of the individuals who provided information during the LPD's investigation. Montgomery claimed that Madlock

[1] The facts relevant to the Petition, and stated in this Memorandum and Order, are not in dispute. The Court's recitation of the facts is primarily drawn from the Nebraska Court of Appeals opinion in *State v. Clark*, No. A-18-1040, 2019 WL 5576315 (Neb. Ct. App. Oct. 29, 2019), the Petition, Filing No. 1; Petitioner's Brief in Support, Filing No. 3; Respondent's Brief, Filing No. 16; Respondent's Supplemental Brief, Filing No. 19; and Petitioner's Response, Filing No. 21.

had asked Montgomery for help in finding marijuana. Montgomery eventually contacted Clark and Clark indicated he could provide marijuana. On June 28, 2017, Madlock came to Montgomery's house in Lincoln, Nebraska to pick up the marijuana. Clark also arrived at Montgomery's house with Dominic Aguirre. Montgomery did not know Aguirre and had not invited him.

As Montgomery attempted to introduce Clark, Clark began to confront Madlock over money that he owed Clark. The argument grew heated, and Aguirre joined in support of Clark, eventually punching Madlock in the face. When Montgomery pushed Aguirre away from Madlock, Aguirre pulled a handgun and threatened Montgomery for interfering. Montgomery and Madlock pleaded with Clark and Aguirre to leave, but they refused. Instead, Clark continued to demand money from Madlock.

Aguirre continued to attack Madlock, and Montgomery continued to ask Clark to leave. Montgomery was concerned that his wife and children would arrive home during the confrontation. Madlock eventually moved to the garage, followed by Aguirre, who continued to attack Madlock. Montgomery was concerned that Madlock needed a hospital to be treated for his injuries. He was also concerned about the blood and disruption to his home. Clark told Montgomery that he would get the mess cleaned up.

Clark then called Merrie Whitaker and Anthony Brock to come to Montgomery's house. Whitaker had done cleaning jobs for Clark in homes that he remodeled and sold. When she arrived, she saw Aguirre outside Montgomery's house and then found a man lying on the floor of the garage. She also heard a man tell Clark, "I think you broke his jaw." Meanwhile, Brock received a Snapchat message showing a man being beaten and then received another with directions to Montgomery's house. When Brock arrived, he

saw Madlock on the floor of the garage, mumbling incoherently. Brock said it was apparent that Madlock needed medical attention.

Brock said that Madlock was carried from the garage to the backseat of Madlock's own vehicle. Aguirre then drove Madlock's vehicle away from Montgomery's house, followed by Clark and Brock. The three went to a business near Cornhusker Highway in Lincoln, and Clark and Brock entered the business. When they came out again, Madlock's vehicle was rocking back and forth, so Brock approached the vehicle. At the vehicle, Aguirre said he had to choke out Madlock. After discovering that Madlock was dead, his body was transported outside Lancaster County, Nebraska and disposed of.

**B. Petitioner's Plea and Sentencing**

Clark was charged with second degree murder, kidnapping, first degree assault, second degree assault, and two counts of use of a firearm to commit a felony. On August 21, 2018, pursuant to a plea agreement and an entry of no contest pleas, Clark was convicted in the District Court of Lancaster County, Nebraska of assault in the first degree and use of a deadly weapon to commit a felony. Filing No. 12-10 at 10-11; Filing No. 12-3 at 2-4. Under the plea agreement, Clark also agreed to cooperate in the investigation and prosecution of other individuals involved. The prosecution agreed to dismiss charges against Clark in another case.

At his plea hearing, the state district court explained to Clark the charges against him, the possible penalties, and the rights he was giving up by entering no contest pleas. The state district court found that Clark understood his rights and knowingly and voluntarily waived them. The court also found that Clark understood the charges and the possible penalties and the consequences of his pleas, and that there was a sufficient

factual basis to support the pleas. On October 25, 2018, the state district court sentenced Clark to consecutive prison terms of 40 to 50 years for assault in the first degree, and 20 to 30 years for use of a deadly weapon to commit a felony, for an aggregate sentence of 60 to 80 years' imprisonment. *See* Filing No. 12-10 at 17-20.

**C. Direct Appeal**

After sentencing, Clark, represented by new counsel, filed a direct appeal. On direct appeal, Clark alleged that (1) the state district court's sentences were excessive, and (2) his trial counsel was ineffective. Filing No. 12-3 at 5. The Nebraska Court of Appeals affirmed Clark's sentences, concluding that there was no indication that the trial court considered inappropriate or improper factors. Filing No. 12-3 at 6. The court also concluded that Clark failed to preserve his ineffective assistance of trial counsel claim. Filing No. 12-3 at 6. The court reasoned that Clark failed to specifically assign and argue his trial counsel's allegedly deficient conduct, and the assigned error was a general allegation that lacked the specificity required under *State v. Mrza*, 926 N.W.2d 79 (Neb. 2019). Filing No. 12-3 at 6. Clark did not file a petition for further review in the Nebraska Supreme Court, and the mandate was issued on December 3, 2019. Filing No. 12-1 at 4.

**D. State Court Postconviction Proceedings**

On December 1, 2020, Clark filed a motion for postconviction relief in the state district court. *See* Filing No. 12-11 at 8-42. Clark asserted several layered claims of ineffective assistance of appellate counsel for failing to properly assign and argue on direct appeal that Clark's trial counsel was ineffective. *See* Filing No. 12-11 at 9-36. For each of his layered claims, Clark asserted that he would not have entered no contest

pleas absent the ineffective assistance of counsel. *See* Filing No. 12-11 at 9-36. Specifically, Clark claimed that his trial counsel failed to properly advise him that (1) he had defenses to the charges of assault in the first-degree and use of a deadly weapon to commit a felony as alleged in the amended information, Filing No. 12-11 at 12, 18; (2) he had defenses to the charges of murder in the second degree, kidnapping, assault in the second degree, and use of a firearm to commit a felony as alleged in the original information, Filing No. 12-11 at 21, 25, 29, 33; and (3) he had a defense to the possible charge of felony murder, Filing No. 12-11 at 34. He also alleged that his appellate counsel was ineffective for failing to properly argue his excessive sentence claim on direct appeal, Filing No. 12-11 at 37.

On May 10, 2021, Clark filed a motion for leave to supplement his verified motion for postconviction relief, and the supplemented verified motion was attached. *See* Filing No. 12-12 at 2-15. In the motion to supplement, Clark alleged another layered claim of ineffective assistance of appellate counsel for failing to properly assign and argue on direct appeal that his trial counsel was ineffective for failing to object to the factual basis as being insufficient. Filing No. 12-12 at 3.

On March 9, 2022, the state district court denied both Clark's motion for postconviction relief and his motion for leave to supplement, without an evidentiary hearing. Filing No. 12-11 at 43. In denying the motions, the district court concluded that Clark's ineffective assistance of counsel claims were affirmatively refuted by the record. Filing No. 12-11 at 50. The court also concluded that Clark failed to establish prejudice. Filing No. 12-11 at 51. The court denied Clark's supplemental motion for postconviction relief, reasoning that his new ineffective assistance of counsel claim was not timely raised

within the one-year statute of limitations period, so it was procedurally barred. Filing No. 12-11 at 58-59. The state district court concluded that the claim would have failed on the merits because the record affirmatively established that the factual basis was sufficient to support Clark's no contest pleas and his counsel could not have been ineffective for failing to argue otherwise. Filing No. 12-11 at 60-63.

Clark appealed, and on March 28, 2023, the Nebraska Court of Appeals affirmed the state district court's judgment. *See* Filing No. 12-4. The court of appeals agreed that the record refuted each of Clark's claims that his trial counsel was ineffective for failing to advise him of various defenses because each of those defenses would have failed. *See* Filing No. 12-4 at 6-9. Accordingly, the court concluded that Clark's appellate counsel could not have been ineffective for failing to properly raise those claims on direct appeal. *See* Filing No. 12-4 at 6-9. The court of appeals further noted that Clark did not dispute that his supplemental claim was procedurally barred, and it affirmed the denial of his motion for leave to supplement his motion for postconviction relief. Filing No. 12-4 at 9.

Clark filed a petition for further review in the Nebraska Supreme Court, which was denied on June 14, 2023. Filing No. 12-2 at 4. The mandate was issued on June 27, 2023. Filing No. 12-2 at 4.

**E. Federal Habeas Proceedings**

On June 26, 2023, Petitioner filed the Petition in this case. Filing No. 1. After initial review, the Court dismissed Petitioner's second, third, and fifth habeas claims, concluding they were not cognizable in a federal habeas action. Filing No. 8 at 2-3. Petitioner's remaining claims are as follows:

Claim One: Petitioner's appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for failing to advise Petitioner of potential defenses to several crimes.

Claim Four: Petitioner's appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for failing to advise Petitioner of the potential sentence he could receive by pleading no contest to the crimes charged.

Filing No. 8 at 1-2.

Respondent argues that Clark cannot establish that the Nebraska Court of Appeals' decision on Claim One involved an unreasonable application of *Strickland*, nor that it based its decision on an unreasonable determination of the facts. Filing No. 16 at 12-16. Respondent argues that Claim Four is procedurally defaulted. The parties have briefed each of the issues. Upon review of the filings of record, an evidentiary hearing is not warranted. Clark's habeas claims are, therefore, fully submitted.

## II. OVERVIEW OF APPLICABLE LAW

Three strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default; (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court; and (3) the standard for evaluating a claim of ineffective assistance of counsel. The Court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Petitioner's claims.

### A. Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or
>
> (B)(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must, therefore, present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly[2] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007)

---

[2] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

(internal citation and quotation omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A credible showing of actual innocence may also allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013), but to do so a petitioner "must show that in light of all the evidence, 'it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt,'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

**B. Deferential Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual

determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court."). The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so

regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### C. The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for petitioners to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and

"leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Claim One

In Claim One, Clark asserts that he received ineffective assistance of appellate counsel for failing to argue on direct appeal that trial counsel was ineffective for failing to advise Petitioner of potential defenses to several crimes. *See* Filing No. 8 at 1. These crimes include assault in the first degree, use of a deadly weapon to commit a felony, murder in the second degree, kidnapping, assault in the second degree, use of a firearm to commit a felony, and felony murder. *See* Filing No. 3 at 2-5. The Court is satisfied that Clark asserted these claims in his motion for postconviction relief and subsequent appeal to the Nebraska Court of Appeals.[3]

Clark's argument is that his trial counsel was ineffective for failing to advise him of viable defenses that he had to these crimes, and that his appellate counsel was ineffective in failing to raise the ineffectiveness of his trial counsel on direct appeal. The Nebraska Court of Appeals rejected this argument on the merits as follows:

> Clark first assigns that the district court erred in overruling his motion for postconviction relief without an evidentiary hearing. Clark argues that he

[3] To the extent that Claim One contains additional allegations other than those set forth in Clark's postconviction motion and appeal, those allegations are procedurally defaulted because Clark did not present them to the Nebraska state courts.

had viable defenses to each of the charges in the original information against him and his trial counsel was ineffective for failing to advise him of those defenses. However, we agree with the district court that the record affirmatively refutes each of Clark's claims. The alleged defenses that Clark believes he had would have failed, such that trial counsel could not have been ineffective for failing to advise Clark on those defenses and appellate counsel could not have been ineffective for failing to properly raise the ineffective assistance of trial counsel claims on direct appeal. *See State v. Dubray*, 885 N.W.2d 540 (Neb. 2016) (if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise issue).

As it was in the district court, the essence of Clark's argument on appeal is that he "played no role in, and had no knowledge of the actions Aguirre took which ultimately led to Madlock's kidnapping." Clark then relies on his alleged lack of participation to support defenses that trial counsel allegedly failed to consider. However, we agree with the district court that the record clearly demonstrates that Clark was an active participant in the crimes against Madlock.

Under Neb. Rev. Stat. § 28-206 (Reissue 2016), a person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender. The statute does not define aiding and abetting as a separate crime, but, rather, aiding and abetting is simply another basis for holding one liable for the underlying crime. *See State v. Kitt*, 823 N.W.2d 175 (Neb. 2012). One who intentionally aids and abets the commission of a crime may be responsible not only for the intended crime, if it is in fact committed, but also for other crimes which are committed as a natural and probable consequence of the intended criminal act. *See State v. Devers*, 945 N.W.2d 470 (Neb. 2020).

Aiding and abetting requires some participation in a criminal act and must be evidenced by some word, act, or deed. *Id.* No particular acts are necessary, nor is it necessary that the defendant take physical part in the commission of the crime or that there was an express agreement to commit the crime. *Id.* While presence, acquiescence, or silence alone are not enough, mere encouragement or assistance is sufficient. *See State v. Stubbendieck*, 924 N.W.2d 711 (Neb. 2019).

Based on the record in this case, there is no doubt that Clark aided and abetted each of the crimes charged in both the original and amended informations. The factual basis clearly establishes that Madlock was violently assaulted with a deadly weapon, kidnapped, and ultimately murdered, and Clark was intimately involved throughout the entire affair. Clark arranged for the meeting, initially confronted Madlock about a debt, and then stood by as Aguirre beat Madlock until he was nearly unconscious and in need of serious medical attention. Thereafter, some combination of

> efforts from Clark, Aguirre, and Brock caused Madlock to be loaded into the back seat of his own vehicle where he was driven away and eventually killed by Aguirre. All of this was established by the factual basis provided in support of Clark's plea, to which Clark did not object. Even without the additional information as to Clark's involvement contained in the PSR, the factual basis alone demonstrates encouragement and assistance enough to establish that Clark aided and abetted each of the crimes committed against Madlock.
>
> Because the alleged defenses that Clark believes he had would have plainly failed in this case, there is no merit to Clark's claims that trial counsel was ineffective for failing to advise Clark on those defenses. *See State v. Collins*, 907 N.W.2d 721 (Neb. 2018) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument). Accordingly, we agree with the district court that Clark's underlying ineffective assistance of trial counsel claims were affirmatively refuted by the record, and appellate counsel could not have been ineffective for failing to properly raise those claims on direct appeal. Thus, we reject this assignment of error and affirm the district court's denial of postconviction relief without an evidentiary hearing.

Filing No. 12-4 at 6-8; *State v. Clark*, No. A-22-219, 2023 WL 2656998, at *4–5 (Neb. Ct. App. Mar. 28, 2023) (internal citations omitted).

The Court finds that the Nebraska Court of Appeals reasonably applied *Strickland* in concluding that there was no merit to Clark's claims that trial counsel was ineffective for failing to advise Clark on defenses to the crimes referenced in the Petition. A careful review of the record reveals that the factual basis for Clark's plea establishes that he aided and abetted each of the crimes he listed under Neb. Rev. Stat. § 28-206. Thus, upon consideration, the Court concludes the Nebraska Court of Appeals' decision was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. The Nebraska Court of Appeals correctly applied the *Strickland* standard to Clark's ineffective assistance of counsel claims, and the state court's determination is entitled to deference.

**B. Claim Four**

Respondent argues that Petitioner's claims of ineffective assistance of counsel in Claim Four are procedurally defaulted. In Claim Four, Clark asserts that his appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to advise Petitioner of the potential sentence he could receive by pleading no contest to the crimes charged. *See* Filing No. 3 at 8; Filing No. 8 at 2. Specifically, Clark asserts he entered his no contest pleas because his trial counsel advised that if he accepted the plea agreement he would receive a maximum of 11 years, and a 3 to 5 year sentence. *See* Filing No. 3 at 8. Respondent argues this claim is procedurally defaulted because Clark did not invoke one complete round of Nebraska's established appellate review process and he is now barred from raising it in a successive postconviction motion.

As stated above, a prisoner must "fairly present" the substance of each of his federal constitutional claims to the state courts before seeking federal habeas relief. *O'Sullivan*, 526 U.S. at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *Akins*, 410 F.3d 451 at 454–55.

The Court agrees that the claims in Claim Four are procedurally defaulted. Clark's direct appeal counsel attempted to raise the issues in Claim Four on direct appeal, but the argument was rejected on state procedural grounds for failure to specifically assign the claim, and Clark did not file a petition for further review. *See* Filing No. 12-5 at 22-26; Filing No. 12-3 at 6. Clark did not assert Claim Four in his state motion for postconviction

relief, nor was it raised in his postconviction appeal to the Nebraska Court of Appeals. *See* Filing No. 12-11 at 8-42; Filing No. 12-7; Filing No. 12-4. Clark did appear to reference the issues in Claim Four in his postconviction petition for further review. *See* Filing No. 12-9 at 12. However, a review of the record confirms the claim was not previously raised in his earlier postconviction proceedings before the state district court or the Nebraska Court of Appeals. Thus, Clark has not invoked one complete round for federal habeas purposes, even though the substance of Claim Four was available to Clark at the time he filed his postconviction motion. *See* *State v. Jackson*, 892 N.W.2d 67, 72 (Neb. 2017) ("A defendant is entitled to bring a second proceeding for postconviction relief only if the grounds relied upon did not exist at the time the first motion was filed.").

Because Claim Four was procedurally defaulted, the Court cannot review it unless Clark can establish cause and prejudice to excuse the default. Liberally construed, Clark argues that the ineffective assistance provided by his trial counsel, resulting in Clark's plea, excuses any procedural default of his claims. *See* Filing No. 21 at 3-5. Clark's argument seems to attempt to reassert the merits of his claim. However, while ineffective assistance of counsel may constitute "cause" in some circumstances, "[n]ot just any deficiency in counsel's performance will do." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Rather, "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim" which must be presented to the state courts. *Id.* at 451–52 (citation omitted) (emphasis in original). Thus, in order to claim that ineffective assistance of counsel is cause to excuse his procedural default of Claim Four, Clark first must have presented his

ineffective assistance of counsel claim in the Nebraska state courts. Because Clark has not prevailed on any of his ineffective assistance of counsel claims, he has not established cause and prejudice to excuse the procedural default of Claim Four.

Finally, Clark has failed to excuse his defaulted Claim Four by showing that there would be a fundamental miscarriage of justice if the court does not consider it on the merits. To establish a fundamental miscarriage of justice, a petitioner must "show, based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup*, 513 U.S. at 327). To obtain review of an otherwise procedurally barred claim based on actual innocence, a petitioner must satisfy a two-part test: (1) the "allegations of constitutional error must be supported with new reliable evidence not available at trial"; and (2) "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (citing *Schlup*, 513 U.S. at 327-28); *accord Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001). Actual innocence means factual innocence, not legal innocence or legal insufficiency. *Narcisse v. Dahm, 9* F.3d 38, 40 (8th Cir. 1993). The Eighth Circuit has determined that the actual innocence "standard is strict; [and] a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction." *Wadlington v. United States*, 428 F.3d 779, 783 (8th Cir. 2005).

Clark has presented no new, reliable evidence of actual innocence in this case. He provides no "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," *Schlup*, 513 U.S. at 324, to demonstrate his claim's credibility. Instead, Clark argues he is excused from the requirements of *Schlup* because the record

before his trial judge already established his "gateway" actual innocence claim. *See* Filing No. 20 at 1, 4. However, even if this were so, for the reasons discussed above, the record confirms Clark's guilt of the crimes alleges. The Court has carefully examined the record and concludes the evidence was sufficient to convict Clark beyond a reasonable doubt. Thus, the Court finds Clark has not satisfied the requisite elements to excuse his procedurally defaulted claims through any "gateway" claim of actual innocence.

**C. Conclusion**

For the reasons stated, Clark's claims are without merit or are procedurally defaulted. Further, for any defaulted claims, Clark has failed to show "cause and prejudice" or a "miscarriage of justice," which are the only exceptions allowing federal review of procedurally defaulted claims. *See Dretke v. Haley*, 541 U.S. 386, 392–93 (2004); *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). Accordingly, the Petition must be dismissed with prejudice in its entirety.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). The Court has applied the appropriate standard and determined Clark is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1. Petitioner's Petition, Filing No. 1, is dismissed with prejudice.

2. The Court will not issue a certificate of appealability in this matter.

3. The Court will enter a separate judgment in accordance with this order.

Dated this 29th day of September, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge